20-339. Yes, good morning. May it please the court, I am Melissa Tuohy with the Office of the Federal Public Defender, appearing today on behalf of the defendant appellant Ernest Ruffin. This court should reverse the district court's decision denying Ruffin's unreasonable search of his property because no well-defined exception to the warrant requirement was present when the bag was searched at the scene of his arrest. In defense of the unlawful search, the government invoked the inventory search exception, but the record does not support its application here. When the district court credited the testimony of government witnesses, it also credited the officer's claim that a single inventory search was initiated at the scene of Ruffin's arrest that was completed at the station. Therefore, the officers were required to act under the procedures offered by the government in defense of that search. They could not selectively follow procedures when they wanted to. The inventory search doctrine is specifically geared towards eliminating officer discretion when conducting such a search. The district court was concerned that the search at the scene was a pretext for a general rummaging through the property to discover the gun that Ruffin told the complainant he had in his bag, but then kind of just skips over to what happened at the station, which the law does not allow when the government says one inventory search was conducted, then the procedures have to apply to all the conduct. First, the procedures don't call for impounding the bag because it specifically states that officers may only inventory items carried by the person, which no officer witnessed Ruffin doing when they placed him into custody. Then they failed to follow any other procedure at the scene, and therefore, nothing was documented except for the contraband that they discovered and discontinued the search and any documentation until they went back to the station. I don't think... Judge Kearse, do you have any questions? No questions. Counsel, I have maybe a few questions. First, let's just focus, to the extent you can, just hypothetically for now, on the second search after they took it back to the barracks. Do you agree that the second search at the barracks was conducted in accordance with Article 31e and that the contraband, the guns, and so on would have been inevitably discovered as a result of this search? I do not, Your Honor. First, because they don't have legitimate custody of the bag under their own procedures because they're not allowed to impound the property that's not carried by the person that is taken into custody. Yeah, but that... So, you're going by first the catastrophe there, which is if they... Let's just assume that it had been possessed or they conducted the second search at the... The search at the barracks. Do you agree that that was conducted in accordance with Article 31e? Yes. Okay. And just focusing on these elements for a... Just a moment with respect to the overall search. Can you tell me what the officers, police officers should, or I guess the state police officers should have done with the bag that was identified by the 911 caller as belonging to Mr. Buffen? And it was identified as a gun, right? Yeah. That was potentially inside the bag. So, what should the police officers have done with that bag? Well, given the context of the stop, they were involved in a criminal investigation regarding the complainant's accusation that Ruffin had assaulted her and indicated that he potentially had a gun either in his bag or in her apartment. She was not sure. So, as they were investigating her claims, they had a suspicion that the bag contained a weapon, and therefore, they had to apply for a warrant in order to search that bag to discover whether that was true. The entire context of the stop is it's an ongoing criminal investigation, and that's what they're engaged in. There's nothing here about... There's nothing present at the scene that involves evidence of caretaking or inventorying or documenting property. They respond. They talk to her. They get a statement. They search her apartment. They see the evidence of the assault. She talks to them about the property. After they don't find anything in the apartment, then they go and search the bag. They find the gun in the bag, and then everything stops. So, because they were engaged in a criminal investigation, they had to apply for a warrant in order to search the bag. Judge LaValle, do you have any follow-up questions? What did they do that was unreasonable? Well, what they did at the scene that was unreasonable under the Fourth Amendment is they were, in their police reports, they said that they were conducting an inventory. However, they didn't document anything that they were doing at the scene, and they acted completely outside the scope of their established and standardized procedures, which is not allowed under any of the controlling case law. The procedures are there for them to follow, which is evidence of acting in good faith, and because they didn't do any of that, they were acting in bad faith with an investigatory purpose. Okay. You can proceed. Okay. So, I think that the court by glossing over what happened at the scene, I mean, this is the government's burden, and the government attempted to meet its burden with this evidence, which included testimony that it's a single course of conduct that is occurring. So, they have to, if that's the case, and they're claiming it's an inventory, they are required under law to follow their own procedures, which they didn't do until they discovered the evidence. So, only at the scene, they only scrutinized suspicious items or contraband at the scene, and everything else they paid no attention to. So, they can't say that they're in the process of an inventory that they start at, almost 5 o'clock at the scene, and is completed at the station at 6.30. If that's the case, which is what they're saying, then they have to follow their procedures the entire time, and not just when they want to. And by deciding when they were going to follow them, they're exercising discretion that's not allowed under the procedures. Okay. All right. You've reserved, as I understand it, two minutes for rebuttal. So, we'll hear from the government, and we'll get back to you. Thank you. Good afternoon, Your Honors. Rajiv Dosanjh for the government. May it please the Court. The state police here acted reasonably in taking custody of Ruffin's suitcase bag and inventorying its contents. Suppression of the evidence is not warranted. The circumstances here establish that the bag was the proper subject of an inventory search under state police policy. And the following key facts are essentially uncontested. There was probable cause to arrest Ruffin for assaulting his girlfriend, whose initials are PT, in her apartment. Shortly before Ruffin's arrest, the first officer on the scene, Officer Conlin, saw Ruffin close to the bag, which was sitting on a sidewalk in the apartment complex leading to a covered stairwell, as shown in the pictures. PT lived on the second floor of the apartment unit. Before the police searched the suitcase bag, PT told the officers that the bag belonged to Ruffin. And there was no one else near the bag, and there was no one else present to take custody of the personal property. And the circumstances indicated that just before his arrest, he had carried the bag out of PT's apartment and set it down in a public spot. Ruffin was left carrying the bag with him at the time of his arrest in the sense that he was transporting it with him in a public space as he left PT's apartment. Now, on appeal, it is Ruffin's burden to show that there was plain error in the district court's finding, quote, that the search of the bag was, quote, initiated pursuant to established inventory procedures. On appeal, Ruffin must show plain error because Ruffin never raised the claim below that the suitcase bag was not a proper subject of the inventory search. There was no claim below that the bag was not an object of the search because it wasn't physically carried at the time of his arrest. The sole argument below was that there was a problem with the manner in which the search was conducted. And the premise of that argument is that the bag was probably subject to the inventory policy of the state police. And the government's position is that there was no plain error, there's no error in the court's finding because the circumstances suggested that this set of circumstances was subject to the inventory search because it was an item that was carried and it was a possession of Ruffin that he had with him at the time. There was also testimony, even if you read the policies very narrowly. Mr. Dosange, I just want to make sure that I understand. I'm sorry for interrupting, but when you say inventory search in the particular context that you use that term, do you mean at the barracks or do you mean at the scene? Your Honor, we would suggest that what happened here was, and this is what the record shows, is that Officer Klocheck was instructed by his supervisor to conduct a quote inventory search. And he began that at the scene. He took an initial look at the bag and in the background, you can't just ignore the fact, I think as Ruffin wants to do, that the police had a reasonable basis to suspect that the bag contained a weapon, possibly loaded. So under that circumstance, Officer Klocheck first looked at the bag, assessed its contents, and I think the best picture of the bag is Appendix 190. It's over brimming with possessions. He takes an initial look at it and he says in his testimony, I didn't want to start laying out all the possessions on the sidewalk, especially given the weather conditions and the time. So he looked at another compartment of the bag. As soon as he found the gun, which was wrapped and entangled in a blanket, he zipped it back up and his supervising officer said continue the search, the inventory search, at the barracks in a more controlled environment. And the judge made a finding that that was done given the fading light and the weather and for those reasons. So the inventory search was initiated at the scene but completed at the barracks. Um, uh, Judge Kearse or Judge LaValle, do you have any questions? No questions. Go ahead. Go ahead. Oh, thank you. Um, uh, just, um, uh, moving on then. Interpreting the state policy, um, in a way that includes the bag as it was left in these circumstances and as we've seen would not authorize unconstitutional searches. This court in the case Perea, um, stated, and this is at our brief on page 35, that, um, police may seize an inventory, personal effects and arrestees that are with him at the time of his arrest when the defendant is arrested in a place other than his home. And that's exactly what it was done here. So, so, so as I, as I understand it, the bag was about 40 feet away, uh, based on the testimony of one of the officers from Mr. Ruffin at the time of arrest. Is that right? That's right. So, uh, what happened was Officer Conlin arrives at the scene. Um, he observes Ruffin first close to the bag, but watches him walk away from it. Um, in that period, he, uh, positively identified him as Ruffin or as person who, uh, the victim claimed had assaulted her and then initiates the arrest. Um, so he was walking away from it and that was seen by the police. Um, okay. Uh, so, uh, so my follow-up question is, and you're, you're saying that that was the, the search that was conducted was a preliminary search, but it was part of an overall, uh, inventory search. That, is that right? That's correct, your honor. And given the circumstances, they broke it off because of the, the nature of what they saw when they conducted a preliminary investigation. And I think it bears emphasis. So was, was, was, was that preliminary search pursuant to, um, the set standardized criteria set out in the article 30-20? Your honor, there's, uh, the article does not, um, speak to whether the police can take a preliminary look at the, at the package that they're going to inventory. Um, it's just, it's silent on this. So I think it bears emphasis that there was no, there's nothing flatly contradictory about what they did here. This is how they interpreted the policy given the circumstances that were presented to them. And I think it also bears emphasis, the context that they were looking at a bag in the middle of an apartment complex in fading light, having to wear gloves because it was winter. And it was entirely reasonable for them, uh, under the, you know, under the reasonable standards that governs, uh, the fourth amendment that they didn't want to continue unloading this bag. Um, and I, and I, and I, I appreciate that the standard always, uh, reasonableness here, but, uh, help me out with this. So if we were to, and I think that this is what you're arguing, but correct me if I'm wrong, if we were to, um, determine that police officers can always conduct a preliminary search of type that happened here of, um, uh, a defendant's possessions, even in the absence of specific standardized criteria with respect to that preliminary search, what's the point of having standardized criteria and of having that requirement in connection with, um, the inventory search exception? Well, your honor, this court has made very clear that the manner in which an inventory search is conducted, um, is, is really the police and the institutions have greater discretion in how they do that. Now, this was an inventory search, so it has to be done only for the, for the, or it has to be done primarily for the purposes of safeguarding valuables, um, potential dangers and to record the contents of the property to protect against claims of theft. Um, so that would always govern, you know, what the police were doing. And, and again, these are a unique set of circumstances where they see a bag that has been left very just, you know, just moments before they arrived on the, on the, um, ground and in the middle of the, of an apartment complex. This was an inventory search and it was done, uh, for those reasons, giving the exposure of the bag to weather, um, and, and the potential that it may contain a dangerous item. So was it, was that pursuant to the, to the standardized explicit criteria? That's my, that's a question. Well, I'm not seeing that. Well, um, so your honor, I think in terms of like the procedure says you can take an initial look at the bag, um, to determine, you know, whether it's safe to proceed. It doesn't, I, you know, that it doesn't say that, but it doesn't prohibit that. And, um, I think given the, the, the constant limitation, which is also in the procedures that, um, the purposes have to be limited to the, to the, to the purposes of an inventory search, I think that protects against a kind of, uh, just allowing, um, these kinds of searches willy nilly. It has to be an inventory search and it has to, the circumstances have to support the need for an inventory. Um, so, uh, for those reasons, we would say that, that, um, the policy that the claim that this is against the policy is just incorrect. And there's enough, uh, protections here to, that this will not allow, um, kind of numerous fourth amendment violations. There's also your honor, I think there's the, the issue is plain error in terms of whether this bag was an item carried by the defendant. I think the court could rely on the fact that this is not a clear and obvious error in interpreting that, that, uh, that. It seems to me that, uh, if, uh, if, um, uh, either just as curious, which is about if you have any questions, they can let me know or ask, ask the question, but it seems to me that, uh, just McEvoy just relied on the inevitable discovery doctrine. He, um, uh, maybe I misread the, uh, the decision, but that was his principle, uh, uh, basis for denying the motion here. Um, so we don't have to deal with that. Many of these issues that, uh, you've been discussing, is that correct? If we agree with him on the ultimate, uh, uh, inevitable, uh, discovery doctrine issue. That is correct, your honor. I think once you, once you determine that the bag was an appropriate object of an inventory search, then I think it necessarily follows what he said, um, that inevitably because the police had, uh, a basis to take custody of the bag, that it would have been inventoried. Um, and, and so that's how he, he, he, he decided the case primarily. I think, your honor, on appeal, we also argued that, um, there's another line of cases, um, and it's the Johnson case and which is again, excited with approval in, in Chadwick by the Supreme Court, where the, you, you suggested that in particular circumstances where police have a good basis to believe that there's a dangerous, uh, instrumentality that's been left in a public spot, um, that they have, the police have the right to seize it and also to know exactly what they're about to be transporting back to the station. Did, did, did the government raise that argument, um, to, in front of Judge McAvoy? We did not, your honors, uh, but I think the court's, uh, on appeal that we, you can decide this matter on, on any basis that any ground that, of course, basis in the record. Um, uh, are there any questions? Judge Kearse, do you have any questions? No questions. I have a question. So, uh, if I understand correctly, part of your argument is that, um, that in this case, the illegality of the guns was because he was a felon, but if he hadn't been a felon, um, so that the gun would not have been illegal, this, the police would still have, have been justified. And in fact, it would have been appropriate for them to do exactly what they did because, um, they opened the bag at the, at, on the sidewalk, uh, uh, not because, not looking for evidence of, of guilt, but looking for, looking to confirm as had been suggested that they were dangerous weapons in the bag, regardless of whether those dangerous weapons, uh, would be, would be evidence of a crime. Uh, it would affect how they would handle the bag and whether they needed to be, have particular care, um, uh, not to allow the bag to be near any untrusted person or whatever in the course of transporting it. Um, that's correct, Your Honor. I don't want to, to, to, to ignore the, the, the idea here, though, that, that they, I don't, there's no evidence that they knew that Ruffin was a felon. There was no testimony to that. Um, that said, I think they, the knowledge that they had was that there was, it was likely, or there was a good possibility there was a gun in the bag. Um, I think this court has said numerous times that, uh, inventory search, the fact that there may be, um, expectation of discovering criminal evidence does not necessarily invalidate an inventory search. Um, so I think this is, this is, uh, you know, it's a, it's a complicated situation. I don't want to, to flatten the complexity of what was going on here, but I do think, Your Honor, that it's not necessarily the case. And I think it's, it's, uh, a reasonable explanation that knowing that there's a potentially loaded gun in the middle of an apartment complex allowed the police to take a step of, of first determining what was in the bag and then stopping the inventory search rather than conducting it in those circumstances. Um, uh, Your Honor, I, we, we, we concede on the, the sentencing issue. Um, I, if I could move on, I just, as far as the consecutive versus concurrent issue, again, because this is going back for resentencing, you know, other additional arguments could be made in a, in a resentencing about the consecutive or concurrent nature of the sentence, which will have to be recalculated. Um, but, uh, here the government's position is that there was no procedural error, no guidelines mistake, um, in, in imposing, in the district court having discretion to impose a concurrent or consecutive sentence under 5G1.3B. Um, okay. Thank you very much. Thank you. One more question. Is there any reason why we should not rely as Judge Lohier was suggesting a moment ago on the district court's conclusion that, uh, that, that all of this was, um, uh, not, not necessary to be decided because of inevitable, inevitable discovery? Your Honor, I would, I would say that, um, that is a, a, a valid basis to, to decide the case. I would suggest though that, um, you would have to, I think initially find that the police had, um, uh, a valid claim to take custody of the bag. And once you have that, then I think it flows that it would be inevitable that they would, they would do an inventory, um, or that they, they had a, a, a right to, to know what they're about to transport. And the validity of the validity of taking custody of the bag derives from the fact that, um, that they could draw a reasonable, they first saw him very close to the bag, a few feet, and they could draw a reasonable inference that he had carried the bag to the spot where it was on the sidewalk. And the fact that he had moved up to 40 feet away from it by the time they arrested him, uh, doesn't make it any less the bag that he was in possession of and had been carrying very shortly before. That's right, Your Honor. I think we, we would urge the court not to, to so narrowly construe the language of policy to, to make it a requirement that the police, that, that the police can only inventory an item that was physically being carried at the exact moment of, um, the arrest. I think given the circumstances, it was reasonable, uh, for the police to interpret the policy to allow them to search the bag that he had just put down in a public place. Okay. Thank you. Okay. We'll, yes, thank you. First, uh, quickly, I wanted to address the plain error argument. Um, it was our argument below that, um, this was not an inventory search conducted pursuant to the New York State police procedures. And in those procedures, uh, uh, it says that police can only impound an inventory items carried by a person. It says that throughout, uh, subsection B, in fact, it's entitled inventorying items carried by a person, and then says when safe to do so, uh, they shall conduct an inventory possessed by a person who has been taken into custody. And again, it later says, don't plunge hands into items carried by the person. So being close to a bag, um, does not equal that. And the problem with making a reasonable inference is that you're discretion outside the scope of what his procedures said. And that's exactly why this, um, exception is so well defined because the court did not want officers willy nilly dealing with property. And you can see how that can happen because the government is here asking the court to read into the procedures that they're allowed to do a preliminary examination. And nothing here was a preliminary examination. Close it testified that he that he plunged his hands into the bag that he didn't want to keep track of all the stuff that was there. He didn't document it, and he just decided to go to the bottom portion of the bag, and he unzipped it, and he kept going until he found, um, guns. And then he stopped. He wasn't supervised as this is just this is just really a do you agree that if they had a valid claim to take custody of the bag at the front end without opening it, uh, that the under the inevitable discovery doctrine inevitably would have discovered the contraband. But I don't think, uh, as I argued, I don't think that we can even get there because you can't inevitably discover what you already discovered. It's one search. So how can part of the search be against procedures and the second part of the search be pursuant to procedures? And the second part constitutes the inevitable inevitable discovery. It's sort of letting them off the hook by by violating their procedures. And then once they got what they wanted, then they follow them. And and I think it's like conduct here, because if you just look at how they documented the general 116, which, by the way, they were required to do at the scene, and they didn't. So we don't even know really what was in the property, because once they started documenting, they had already searched it. And Klosik testified. He said, I don't remember anything about what happened at the scene. I didn't document it, and he's required to. So they're just acting arbitrarily with Ruffin's property that is not allowed by by the Fourth Amendment or the exception, and therefore it's unreasonable. Thank you. Thank you. We'll reserve decision. We'll hear.